***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into evidence by the parties at the deputy commissioner hearing and before the close of the record, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit # 1, as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 24 November 1999, an employment relationship existed between the plaintiff-employee and defendant-employer.
3. On 24 November 1994 defendant was self-insured with Key Risk Management Services as the Third Party Administrator.
4. On 24 November 1999 plaintiff's average weekly wage was $462.10, yielding a compensation rate of $308.14 per week.
5. Plaintiff's medicals with respect to this claim are admitted into evidence as Stipulated Exhibit # 2. These include the following providers:
1.) Fayetteville Family Medical Care;
2.) Carolina Imaging (1/10/00 MRI);
3.) Carolina Neurological Services;
4.) Pro-Active Therapy;
5.) Occupational Health Services;
6.) Cape Fear Valley Medical Center (3/16/00);
7.) Cape Fear Neurology;
8.) Cape Fear Valley Medical Center (5/2/00); and
9.) Carolina Imaging (12/19/00).
6. The following Industrial Commission Forms are admitted into evidence as Stipulated Exhibit # 3:18,19,61,33 33R.
7. Plaintiff's Discovery Responses are admitted into evidence as Stipulated Exhibit # 4.
8. Defendant's Discovery Responses are admitted into evidence as Stipulated Exhibit # 5.
9. Plaintiff's Personnel records are admitted into evidence as Stipulated Exhibit # 6.
10. The issues before the deputy commissioner were: whether the plaintiff sustained a compensable injury arising out of and in the course of her employment with defendant; and, if so, what, if any, benefits is she entitled. Plaintiff also requested attorney fees pursuant G.S. § 97-88.1.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Bruce Jaufman and Dr. Tinsley Rucker are ruled upon in accordance with the applicable provision of the law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On 24 November 1999 plaintiff was a 39 year old female employed by defendant as a Case Worker II. This position required plaintiff to interview and evaluate applicants for Medicaid, Food Stamps and the Work First program. Plaintiff had recently been promoted to this position effective 22 November 1999 and she was still receiving training. Plaintiff was scheduled to actually begin interviewing applicants on 24 November 1999.
2. As plaintiff was coming into work on 24 November 1999 she was carrying a crate of forms up the stairs of defendant-employer's office where she worked when she felt a pull in her neck and right shoulder pain. Plaintiff had taken the forms home the night before in order to prepare them so she could begin interviewing applicants. Plaintiff obtained permission from Sharon Oldenwelder to take the forms home since they did not contain client names or information. The crate, with forms, weighed between 20-25 pounds.
3. Plaintiff reported the injury to her supervisor's supervisor, Betty Beasley. She did not report it to her supervisor, Janine Wright, because Ms. Wright was on vacation. Plaintiff went to Ms. Beasley's office immediately after the injury to report it, but Ms. Beasley was not in her office. Plaintiff left a message with Ms. Beasley's secretary, Valerie, that she needed to talk with Ms. Beasley. When Ms. Beasley phoned the plaintiff, the plaintiff informed her of the injury, but did not discuss it in detail because plaintiff had a client with her. Ms. Beasley said she would get back with the plaintiff later. The next day the office was closed for Thanksgiving holiday.
4. The next week, plaintiff's former supervisor with defendant-employer, Sherry Arnett, was on vacation, but came into the Department of Social Service office with her grandbaby. Plaintiff could not hold the baby due to her neck and shoulder pain, which had worsened. Plaintiff informed Ms. Arnette she could not hold the baby because she had been injured at work.
5. Plaintiff also informed her new supervisor, Janine Wright, of her injury at work around the first of December 1999.
6. When plaintiff's right shoulder, neck and arm pain did not improve, plaintiff sought treatment from Fayetteville Family Medical Center on 20 December 1999. The pain in her right shoulder extended into her right wrist. At that visit, plaintiff was seen by a medical student rather than plaintiff's regular physician. The diagnosis at that time was wrist pain.
7. On 6 January 2000 plaintiff again sought treatment at Fayetteville Family Medical Center complaining of neck pain. Plaintiff was diagnosed with neuropathy and referred for a MRI.
8. A 10 January 2000 MRI indicated broad based bulges at C5-6, C4-5 and C3-4 with mild bilateral symmetrical neural foraminal narrowing and no focal disc herniation demonstrated; the central canal was narrowed at C3-4 but not frankly stenotic; and, degeneration was noted at C7-T1 with mild narrowing without a bulge.
9. Plaintiff was referred to Dr. Bruce Jaufman, a neurosurgeon, on 6 January 2000. Dr. Jaufman had previously treated plaintiff in 1994 for a neck injury. In 1994, plaintiff had fusion surgery at the C4-5 level, but had recovered from that injury and had not sought further treatment from Dr. Jaufman until after her 24 November 1999 incident at work. Dr. Jaufman initially suggested conservative therapy which included cervical traction, physical therapy and medications.
10. Plaintiff's symptoms did not improve and she had significant neck pain, right shoulder pain, lateral arm pain and pain radiating into the dorsal surface of her hand and her index, third and fourth fingers. Dr. Jaufman ordered EMG studies and a myelogram. These tests revealed a right paracentral disc bulge at C5-6. This type of disc bulge was consistent with plaintiff's symptoms.
11. When plaintiff's symptoms did not improve, plaintiff underwent an anterior cervical disketomy and fusion at the C5-6 level on 2 May 2000. Plaintiff worked up until the day before the surgery.
12. As a result of her work-related incident on 24 November 1994, plaintiff was unable to work or earn wages from 2 May 2000 through 11 December 2000. Plaintiff returned to work for defendant on 11 December 2000 at the same or greater wages than she had earned prior to 24 November 1999.
13. Plaintiff's symptoms improved following the 2 May 2000 surgery. However, at the close of the record before the deputy commissioner plaintiff had not reached maximum medical improvement and was not assigned a permanent impairment rating.
14. The greater weight of the evidence is that plaintiff's herniated cervical disc, for which she received surgery in May 2000, was caused and/or aggravated by the incident at work on 24 November 1999. Plaintiff's previous 1994 fusion at the C4-5 level made her more susceptible to a herniation above or below that fusion, however, is not found to be the sole cause for the injury made the basis of this claim.
15. It was reasonable to hold a hearing to determine the issues in this case. This action was not defended unreasonably.
 ***********
The foregoing findings of fact, and conclusion of law engender the following additional:
 CONCLUSIONS OF LAW
1. On 24 November 1999, plaintiff sustained a compensable injury to her cervical spine arising out of and in the course of her employment with defendant-employer. G.S. § 97-2 (6). The compensable injury consists of injury to plaintiff's C5-6 disk which has been surgically corrected and temporary aggravation to plaintiff's cervical spine from C3 to T1.
2. As a result of plaintiff's compensable injury, plaintiff is entitled to temporary total disability at her compensation rate of $308.14 per week from 2 May 2000 through 11 December 2000. G.S. §97-29.
3. The issues of maximum medical improvement, any other periods of total or temporary disability after the deputy commissioner hearing, and any permanent partial disability is reserved. Should the parties have a disagreement concerning these, or other, issues, they may seek a hearing before the Commission by filing a Form 33.
4. Plaintiff is entitled to have defendant pay all medical expenses incurred by plaintiff as a result of her compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's period of disability. G.S. § 97-25.
5. Plaintiff is not entitled to attorney fees pursuant to G.S. §97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney fee herein approved, defendant shall pay to plaintiff $308.14 per week from 2 May 2000 through 11 December 2000. Those amounts have accrued and shall be payable in a lump sum.
2. Defendant shall pay all medicals expenses incurred by plaintiff as a result of her compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded plaintiff in Paragraph 1 of this AWARD is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER